**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| STEVEN BOWIE, | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| v. | § | Case No. |
| | § | Jury |
| | § | |
| BAYLOR SCOTT AND WHITE | § | |
| HEALTH, | § | |
| *Defendant*. | § | |

**COMPLAINT**

Plaintiff Steven Bowie sues Defendant Baylor Scott and White Health ("BSW") for violating federal law. In support, Bowie shows the following:

**Nature of the Case**

1.      This is an employment case. Bowie challenges BSW's decision to fire him.

2.      In Count One, Bowie brings a claim for retaliation pursuant to Section 15(a)(3) of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3)("FLSA").

3.      In Count Two, Bowie brings a claim for discrimination pursuant to Section 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII").

**Parties**

4.      Plaintiff Steven Bowie is an individual. He currently resides in Denton County, Texas.

5.      Defendant Baylor Scott and White Health ("BSW") is a Texas corporation. It is currently in good standing.

A.      BSW may be served with process by serving its **registered agent, CT Corporation System,** at the following location – **1999 Bryan Street, Suite 900, Dallas, Texas**

**75201,** or wherever else BSW may be found.

## Jurisdiction

6.     This Court has original, subject-matter jurisdiction over this action because Bowie's claims present federal questions. *See* 28 U.S.C. §1331 ("federal question").

7.     This Court has personal jurisdiction, both specific and general, over BSW because

>     A.     BSW conducts business in Texas;

>     B.     BSW's corporate headquarters is in Texas;

>     C.     Bowie's claims arose in Texas; and,

>     D.     BSW is amenable to service by this Court.

## Venue

8.     Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to Bowie's claims occurred here. *See* 28 U.S.C. §1391(b)(2).

## Material Facts

9.     BSW provides inpatient, outpatient, rehabilitation, surgical, and emergency medical services through various hospitals, including one in Carrollton.

10.     BSW offers cancer care, digestive diseases, heart and vascular, imaging and radiology, neuroscience, orthopedics, rehabilitation and physical therapy, transplant, and women's health services.

11.     BSW provides allergy and immunology, behavioral and psychological health, dermatology, kidney disease, palliative care, primary care, sleep disorders, urology, wellness and fitness, wound care, asthma care, breast imaging, cosmetic and plastic surgery, diabetes and endocrinology, heart and vascular, infectious diseases, men's health, oral surgery, pain management, pediatric care, pulmonology, scoliosis care, spine care, weight management and

surgery services, as well as ear, nose, and throat services.

12.     BSW is headquartered in Dallas.

13.     BSW or one of its predecessors-in-interest hired Bowie effective July 16, 2012.

14.     Bowie worked for BSW or one if its predecessors-in-interest as a Pharmacy Technician.

15.     Bowie worked for BSW or one of its predecessors-in-interest throughout his entire term of employment.

16.     BSW was an employer of Bowie as the word "employer" is defined in 29 U.S.C. §203(d) and 42 U.S.C. § 2000e(b).

     A.     BSW was an employer of Bowie, as the word "employer" is defined in 29 U.S.C. §203(d) and 42 U.S.C. § 2000e(b), on January 1, 2017.

     B.     BSW was an employer of Bowie, as the word "employer" is defined in 29 U.S.C. §203(d) and 42 U.S.C. § 2000e(b), without interruption from January 1, 2017 through March 29, 2018.

     C.     BSW ceased being an employer of Bowie, as the word "employer" is defined in 29 U.S.C. §203(d) and 42 U.S.C. § 2000e(b), on March 30, 2018.

17.     During this current calendar year, BSW has employed more than 500 employees in each of 20 or more calendar weeks.

18.     During all of calendar year 2017, BSW employed more than 500 employees in each of 20 or more calendar weeks.

19.     At all times from January 1, 2015 to the filing of this pleading, BSW has been considered an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20.     At all times from January 1, 2015 to the filing of this pleading, BSW has been

**Complaint**                                                                                          **Page 3**

considered an enterprise that is engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. 203(s)(1), in that said enterprise has had (a) employees engaged in commerce or the production of goods for commerce, or (b) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person. In addition, said enterprise has had an annual gross volume of sales made, or business done, of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

21.     At all times from January 1, 2015 to the filing of this pleading, Bowie was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

22.     BSW employed Bowie within the applicable statute of limitations for the FLSA.

23.     BSW employed Bowie within the applicable statute of limitations for Title VII.

24.     Bowie was an employee of BSW as the word "employee" is defined in 29 U.S.C. §203(e) and 42 U.S.C. §2000e(f).

        A.     Bowie was an employee of BSW, as the word "employee" is defined in 29 U.S.C. §203(e) and 42 U.S.C. §2000e(b), on January 1, 2017.

        B.     Bowie was an employee of BSW, as the word "employee" is defined in 29 U.S.C. §203(e) and 42 U.S.C. §2000e(b), without interruption from January 1, 2017 through March 29, 2018.

        C.     Bowie ceased being an employee of BSW, as the word "employee" is defined in 29 U.S.C. §203(e) and 42 U.S.C. §2000e(b), on March 30, 2018.

25.     BSW issued to Bowie an IRS Form W-2 for Year 2017.

26.     The IRS Form W-2 referenced in paragraph 25 gives the following name as the

**Complaint**                                                                                          **Page 4**

name of Bowie's employer – "Baylor Scott & White Health, Agent for BSW Medical Center – Carrollton."

27.     From January 1, 2015 to the end of Bowie's employment in 2018, BSW operated a facility at 4343 North Josey Lane, Carrollton, Denton County, Texas.

     A.     From January 1, 2015 to the end of Bowie's employment in 2018, the name of this facility was Baylor Scott & White Medical Center – Carrollton (hereinafter "BSW-Carrollton").

     B.     From January 1, 2015 to the end of Bowie's employment in 2018, Ms. Marilyn Sears worked at BSW-Carrollton and was assigned to Human Resources.

28.     BSW or one of its predecessors-in-interest assigned Bowie to the facility referenced in paragraph 27 *supra* at all times during Bowie's employment.

29.     From January 1, 2015 to the end of Bowie's employment in 2018, Bowie worked at BSW-Carrollton.

30.     Beginning in November 2017 and continuing through the end of Bowie's employment in 2018, Bowie's immediate supervisor was Ms. Melanie Strickland.

31.     Beginning in November 2017 and continuing through the end of Bowie's employment in 2018, Strickland worked as a pharmacist in charge at BSW-Carrollton.

32.     In 2017 through the end of Bowie's employment in 2018, Ms. Dana Radmann worked as Director of Pharmacy at BSW-Carrollton.

33.     In 2017 through the end of Bowie's employment in 2018, Bowie worked the "evening shift," *i.e.,* the shift that starts at 3:00 p.m. and ends at 11:30 p.m.

34.     John Evenson worked with Bowie during the evening shift at BSW-Carrollton from the summer of 2015 to May 2017.

**Complaint**                                                                                                    **Page 5**

35. In August 2017, BSW-Carrollton, by and through Radmann, advised Bowie that BSW-Carrollton was going to transfer Evenson from the evening shift to the morning shift.

    A. The hours for the morning shift were 6:00 a.m. to 2:30 p.m.

36. BSW-Carrollton never replaced Evenson during the evening shift.

37. After Evenson's transfer from the evening shift to the morning shift, BSW-Carrollton insisted that (i) Bowie complete the same quantity of tasks (ii) at the same level of quality as when Evenson, a full-time employee, accompanied Bowie on the evening shift.

38. BSW-Carrollton required Bowie to complete work that employees during the previous day shifts -- *i.e.,* employees who worked either from 6:00 a.m. to 2:30 p.m., or from 7:00 a.m. to 3:30 p.m. -- had been assigned but had failed to complete.

    A. Most of the employees who worked on these day shifts were women, *e.g.,* Mses. Carol Oliver, Reena Sabu, Sharmin Jumper, Cheryl Green, and Shawna Last Name Unknown.

    B. BSW imposed a greater workload onto Bowie, who is male, than it imposed onto its female employees. Examples of this disparate treatment include the following:

        (1) lifting heavy boxes;

        (2) breaking down boxes;

        (3) filling and running the day shifts' cart fills to the upper floors;

        (4) responding, month after month, to nurses' calls about "expired medications" that were never even assigned to Bowie's unit.

        (5) leaving anesthesia trays and crash cart trays for Bowie to fill and replace.

39. BSW-Carrollton gave Bowie "projects" that Bowie could not do by myself without

working overtime hours.

40.     On multiple occasions, Bowie reported to BSW-Carrollton – specifically, Strickland and Radmann -- his concerns about the additional hours of work that BSW was foisting onto him. Bowie made such reports to BSW-Carrollton --

        A.     in November 2017.

        B.     in January 2018.

        C.     in February 2018.

        D.     in March 2018.

41.     On or about March 16, 2018. BSW-Carrollton had Bowie clean out the back IV fluid storage room. When Bowie told Strickland and Radmann that he normally does not perform this task, Strickland told Bowie that this was now part of his (*i.e.,* Bowie's) responsibility, and now on Bowie's "workflow." When Bowie told Strickland and Radmann that he could not perform both his normal job duties plus this new task, Radmann told Bowie, "*You're doing this by yourself, and I expect it to be done by the time you leave tonight, with no overtime*." Strickland and Radmann then walked off.

        A.     BSW gave Bowie the task referenced in this paragraph at 8:00 p.m. The normal time for the evening shift to end was 11:30 p.m. On this occasion, Strickland and Radmann both knew the time when the evening shift ended. However, thanks to this additional task, plus the time when they imposed this new task (8:00 p.m.), Bowie was unable to end his shift that night until 12:45 a.m. the next morning.

42.     When Bowie arrived at work on March 30, 2018, BSW was paying wages, as defined by TEX. LAB. CODE § 61.001(7)(A), to Bowie at a rate of $21.25 per hour.

43.     When Bowie arrived at work on March 30, 2018, BSW was providing Bowie with

**Complaint**                                                                                                                                      **Page 7**

the following benefits: (i) health insurance, (ii) 401(k), (iii) PTO, (iv) dental insurance, (v) vision insurance, and (vi) short term disability insurance.

44.     When Bowie arrived at work on March 30, 2018, BSW's employment records reflected the fact that Bowie's gender was male.

45.     When Bowie arrived at work on March 30, 2018, BSW was unaware of Bowie suffering from any physical disability that would render him unfit for the position of Pharmacy Tech at BSW-Carrollton.

46.     When Bowie arrived at work on March 30, 2018, BSW was unaware of Bowie suffering from any loss of a necessary professional license that would render him unfit for the position of Pharmacy Tech at BSW-Carrollton.

47.     When Bowie arrived at work on March 30, 2018, BSW was unaware of Bowie suffering from any occurrence that would render Bowie unfit to perform any job tasks of the employment position of Pharmacy Tech at BSW-Carrollton.

48.     BSW fired Bowie.

49.     BSW fired Bowie on the afternoon of March 30, 2018.

50.     BSW fired Bowie on the afternoon of March 30, 2018, effective immediately.

51.     On the afternoon of March 30, 2018, Strickland met Bowie right after Bowie had walked through the pharmacy doors to work.

    A.     Bowie's shift on this day began at three o'clock in the afternoon.

52.     Strickland, accompanied by Bowie, then walked into Radmann's office.

53.     Three people – Strickland, Bowie, and Radmann – then left Radmann's office and walked to the Human Resources office, where they were met by Sears, who was standing at a doorway.

**Complaint**                                                                                               **Page 8**

54.     Four people – Strickland, Bowie, Radmann, and Sears – then walked to Sears's office.

55.     Once at Sears's office, BSW, by and through Sears, advised Bowie that it had decided to fire Bowie

56.     Once at Sears's office, BSW, by and through Sears, advised Bowie that it had decided to fire Bowie due to what Sears called "patient safety."

    A.     Strickland was present when Sears uttered the words "patient safety" to Bowie.

    B.     Radmann was present when Sears uttered the words "patient safety" to Bowie.

    C.     During this meeting, Radmann told Bowie that BSW had found "expired medications" in Bowie's unit.

57.     The stated reason for the discharge decision referenced in paragraph 56 and 56.B is unworthy of credence.

    A.     In February 2018, when Strickland and Radmann were not on site at BSW-Carrollton, Bowie apprised a former manager and current pharmacist named Mr. Justin Ong that certain medications were **going to** expire.

    B.     Ong responded by telling Bowie that these about-to-expire medications were on "back order."

    C.     Ong responded by telling Bowie to leave these about-to-expire medications "in the crash cart."

        (1)     Bowie complied with Ong's instructions.

58.     During the discharge meeting referenced in paragraphs 55-56 *supra*, Strickland told

**Complaint**                                                                                     **Page 9**

Bowie that Bowie should have called or emailed her or Radmann about what to do with the soon-to-be-expired medication.

> A.      In February 2018, both Strickland and Radmann were often away from BSW-Carrollton.

> B.      In February 2018, both Strickland and Radmann were often away from BSW-Carrollton due to the closure of a BSW facility in Garland.

> C.      In February 2018, Strickland had actual knowledge that certain medication was going to expire in March 2018.

> D.      In February 2018, Radmann had actual knowledge that certain medication was going to expire in March 2018.

59.      More than once, BSW-Carrollton's day shift had expired medications; yet, unlike Bowie, BSW-Carrollton did not discharge any of the pharmacy techs from that shift.

60.      BSW provided Bowie with no written warnings before the discharge meeting referenced in paragraphs 55-56 *supra*.

61.      BSW mailed to Bowie what's commonly called a "COBRA letter." In the letter, BSW states that Bowie is eligible for continuing coverage of his health insurance so long as he pays a certain premium.

62.      On May 8, 2018, Bowie digitally signed charge of discrimination number 450-2018-03677 ("Charge") with EEOC.

> A.      In the Charge, Bowie alleges, among other things, that BSW discriminated against him because of his gender (male).

63.      On May 8, 2018, EEOC prepared a form titled *Dismissal and Notice of Rights*. The form was signed by EEOC's District Director. In this form EEOC advised Bowie, among other

things, that he had ninety days within which to sue BSW under the "federal law based on this [C]harge" – in this case, Title VII – failing which Bowie's "right to sue based on this [C]harge will be lost."

A.     On the lower left-hand corner of this form, EEOC represented that it had "ccd" this form to the following individual – Mr. Robert Michalski, Chief Compliance Officer, Baylor Scott & White Health, 3500 Gaston Avenue, Dallas, Texas 75246.

64.     Due to BSW's actions/conduct, including the foregoing, Bowie has sustained financial losses, which he is continuing to sustain.

65.     Due to BSW's actions/conduct, including the foregoing, Bowie has suffered mental anguish, which he is continuing to suffer.

**Count One:**
**FLSA; Retaliation; Discharge**

66.     Bowie re-alleges and incorporates by reference all allegations set forth in paragraphs 9 through 65.

67.     BSW fired Bowie in violation of 29 U.S.C. § 215(a)(3), which states it is a violation of the FLSA "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]."

68.     Bowie seeks all relief available to him under 29 U.C.C. § 216(b), which states, "Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." Accordingly, the relief sought

by Bowie includes the following categories of damages:

      A.     all wages and employment benefits, starting on the effective date of Bowie's discharge, and ending on the date when a jury renders a verdict ("back pay");

      B.     liquidated damages;

      C.     recovery for all emotional injuries resulting from BSW's retaliation;

      D.     punitive damages;

      E.     reinstatement, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Bowie will be made whole ("front pay");

      F.     all permitted equitable relief;

      G.     all interest allowed by law, *e.g.,* pre-judgment and post-judgment;

      H.     a reasonable attorney's fee to the undersigned counsel as part of the costs;

      I.     reimbursement of expert fees as part of the undersigned counsel's attorney's fee; and,

      J.     all other costs allowed by law.

### Count Two:
### Title VII; Discrimination; Discharge

69.    Bowie re-alleges and incorporates by reference all allegations set forth in paragraphs 9 through 65.

70.    BSW fired Bowie in violation of Section 703 of Title VII, 42 U.S.C. §2000e-2.

71.    The "Material Facts" portion of this lawsuit shows that Bowie has already established a *prima facie* case.

      A.     When BSW advised Bowie that he was fired, Bowie was a member of a

class that is protected by Title VII. See paragraph 44 *supra*.

      B.    When BSW advised Bowie that it was terminating his employment, Bowie was "qualified" for *prima facie* purposes. See paragraphs 45-47 *supra.*

      C.    When BSW advised Bowie that it was terminating his employment, *see* paragraphs 48-50 *supra*, Bowie suffered a cognizable adverse employment action.

      D.    BSW treated Bowie less favorably than other similarly situated employees who were outside the group identified in subpart A of this paragraph. *See* paragraph 59 *supra.*

72.    Bowie has satisfied the following conditions precedent to the filing of Count Two – *first*, Bowie timely filed the Charge with EEOC; *second*, EEOC made the decision to give to Bowie a "right to sue" letter; *third*, EEOC did give to Bowie a "right to sue" letter; and *fourth,* Bowie, by and through his attorney, filed this lawsuit within 90 days of Bowie's receipt of EEOC's "right to sue" letter.

73.    Bowie seeks all relief that is available to him under Section 703 of Title VII. This includes but is not limited to the following categories:

      A.    all wages and employment benefits, starting on the effective date of Bowie's discharge, and ending on the date when a jury renders a verdict ("back pay").

      B.    reinstatement, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Bowie will be made whole ("front pay").

      C.    compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

      D.    punitive damages, given the fact that BSW engaged in such discriminatory

practices with malice or with reckless indifference to Bowie's federally-protected rights.

      E.      all permitted equitable relief.

      F.      all interest allowed by law, *e.g.,* pre-judgment and post-judgment.

      G.      a reasonable attorney's fee to the undersigned counsel as part of the costs.

      H.      reimbursement of expert fees as part of the undersigned counsel's attorney's fee.

      I.      all other costs allowed by law.

## Jury Demand

74.     Bowie demands a jury on all issues so triable. *See* FED. R. CIV. P. 38.

## Request for Relief

WHEREFORE, Plaintiff Steven Bowie asks that Defendant Baylor Scott & White Health appear and answer, and that on trial of this action Bowie have final judgment against BSW as set forth hereinabove, and for all such other and further relief to which Bowie is justly entitled.

Dated: August 3, 2018

                Respectfully submitted,

                          */s/*

By: _____

                **Wade A. Forsman**
                State Bar No. 07264257
                P.O. Box 918
                Sulphur Springs, TX 75483-0918
                903.689.4144 Telephone-East Texas
                972.499.4004 Telephone–Dallas/Fort Worth
                903.689.7001 Facsimile
                **wade@forsmanlaw.com**

                **Attorney for Plaintiff Steven Bowie**